IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TERRANCE EDWARDS,

                  Petitioner,                              OPINION and ORDER

      v.                                                         08-cv-388-bbc

MICHAEL THURMER, Warden,
TERALYN SELL, Crisis Worker,
CAPT. O'DONOVAN, GARY ANKARLO,
Psychologist, Ph.D, JAMES DREER,
Director of Bureau of Health Services,
C. GRISDALE, Psychologist, Ph.D,
RICK RAEMISCH, Secretary of the Wisconsin
Department of Corrections,
CITY OF WAUPUN - "MAYOR", and
DODGE COUNTY BOARD OF SUPERVISORS,[1]

                  Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a proposed civil action for injunctive and monetary relief brought pursuant to 42 U.S.C. § 1983. Petitioner Terrance Edwards contends that prison officials violated his Eighth Amendment rights by failing to protect him from his cellmate and by giving him

---

[1] In petitioner's original complaint, he names fewer defendants. However, before the court could screen his complaint, petitioner filed a motion to amend his complaint and attached a complete proposed amended complaint, dkt. #16, which will be treated as the operative pleading in this case. I have amended the caption accordingly.

1

poison that caused the pigmentation in his skin to dissolve. Petitioner has requested leave to proceed in forma pauperis and has paid the initial partial filing fee.

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. Haines v. Kerner, 404 U.S. 519, 521 (1972). However, if the litigant is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed if the prisoner has had three or more lawsuits or appeals dismissed for lack of legal merit (except under specific circumstances that do not exist here), or if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915(e)(2).

Petitioner will be denied leave to proceed on his claim that prison officials violated his Eighth Amendment rights by putting him in a cell with a cellmate in spite of petitioner's aggressiveness because petitioner's tendency to harm others is insufficient on its own to allow an inference to be drawn that petitioner faces a substantial risk of serious harm. Moreover, petitioner will be denied leave to proceed on his claim that respondents violated his Eighth Amendment rights when prison officials poisoned him because petitioner has not alleged any facts to suggest respondents' personal involvement in the poisoning.

As an initial matter, petitioner has filed ten motions to amend or supplement his complaint. Because many of those motions were filed before he filed dkt. #16, which is now

2

the operative pleading, those motions will be denied as moot. However, petitioner has filed some of the motions to supplement his complaint since then. Dkts. ##17, 18. These motions will be denied because the proposed supplements do not add anything to his complaint. With one exception, the supplements do no more than suggest legal theories (deliberate indifference and discrimination) and seek to clarify petitioner's intent to sue respondents in their "personal capacity," not their "official capacity."

There is one minor caveat. In dkt. #18, petitioner also moves to "disregard" his claim against two respondents identified in his new complaint, Dodge County Board of Supervisors and City of Waupun. Although this could be taken as an attempt to amend the complaint to remove respondents, it is better understood as a notice filed by petitioner to voluntarily dismiss his complaint as to those respondents pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). Those respondents are dismissed from the case automatically upon filing of the notice. No action is required by the court. Id.

In his complaint, petitioners allege the following facts.

ALLEGATIONS OF FACT

A. Parties

Petitioner Terrance L. Edwards is a prisoner at the Waupun Correctional Institution. Respondent James Dreer is employed at the Bureau of Health Services. Rick Raemisch is

3

Secretary of the Wisconsin Department of Corrections. At the Waupun Correctional Institution, respondent Michael Thurmer is the warden, respondent Gary Ankarlo is a psychologist and supervisor, respondent C. Grisdale is a psychologist, respondent Teralyn Sell is a crisis worker and respondent J. O'Donovan is a captain.

### B. Placement with Cellmate

On May 21, 2006, petitioner heard voices in his head that told him to kill his cellmate. At the time, petitioner knew he was hearing voices, and had met with respondent Sell to talk about this problem. She told him to start recording what the voices would say when they started bothering him.

Petitioner wrote a request to psychological services telling them that the voices were telling him to kill his cellmate. Respondent Sell wrote petitioner a conduct report for making threats to his cellmate and security staff took him to the segregation building. In response to the conduct report, petitioner stopped eating for a week or so, after which time he was taken to the hospital unit.

Petitioner met with respondents Ankarlo and nursing staff and a social worker while in the hospital unit. Respondent Ankarlo told petitioner that he would be referred to the Wisconsin Resource Center for treatment, but he would not be accepted unless he started eating. Petitioner agreed to start eating.

4

Petitioner was given a hearing on the conduct report he had received from respondent Sell. Respondent O'Donovan conducted the hearing. He found petitioner guilty of the conduct report and sentenced him to 90 days' segregation.

Petitioner was never taken to the Wisconsin Resource Center as he believed he was promised. After his segregation time had been served, staff could have placed petitioner in a single cell for clinical or security reasons, but instead, he was placed back in his cell, with another cellmate. The first cellmate to share petitioner's cell knew that petitioner was having "psychological" problems and quickly transferred out of petitioner's cell, leaving him alone for a few days. However, after a few days another inmate named "Patterson" was placed in petitioner's cell.

Around that time, petitioner was called to psychological services to take a personality test. Petitioner spoke with respondent Grisdale before taking the test, telling him about his auditory hallucinations, showing him reports from other doctors, and telling him that he did not feel safe sharing his cell with other inmates. Petitioner was diagnosed with anti-social personality disorder. The diagnostic criteria for this disorder are 1) reckless disregard for safety of self and others; 2) impulsivity or failure to plan ahead; 3) irritability and aggressiveness, as indicated by repeated physical fights or assaults; and 4) failure to conform to social norms with respect to lawful behaviors.

Some time after that, petitioner got into a "bloody fight" with Patterson. Patterson

5

was seriously injured and petitioner was "injured as well." After a hearing conducted by respondent O'Donovan, petitioner was sentenced to 360 days in segregation for battery to an inmate.

### C. Poisoning

In or around July or August 2007, while in segregation for battery to an inmate, petitioner began to feel as if he was "being poisoned or something" from the food and drinks he was served. Petitioner put in a request to the hospital unit explaining his concern. Petitioner saw nurse Mark, who thought it might be acid reflux and prescribed antacid medicine. Petitioner knew it was not acid reflux because he had had that before and it felt different. The antacid did nothing for petitioner, so he began to exercise to try to "sweat out" the poison, to no avail.

Petitioner noticed that the pigmentation in his skin was "dissolving away" a little at a time, so he put in another slip to see the hospital unit. The nurse diagnosed it as vitiligo, a chronic skin disease that causes loss of pigment associated with autoimmune diseases. Petitioner has no family history of vitiligo and has not been told of any autoimmune disease he has that may be causing the vitiligo. Petitioner has dark brown skin, but the vitiligo has created white patches on his arms, legs, back, chest, hand and under his right eye.

6

OPINION

A. Claim for Failure to Protect Petitioner from Cellmate

Petitioner contends that defendants violated the Eighth Amendment by failing to separate him from his cellmate even after he told them that he was hearing voices that told him to kill his cellmate. A petitioner states a claim of Eighth Amendment deliberate indifference against a respondent if he alleges that (1) he faced a substantial risk of serious harm; (2) the respondent knew of that risk, or was aware of facts from which that substantial risk of serious harm could be inferred and drew that inference; and (3) respondent disregarded that risk nonetheless. Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005) (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)); Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997).

Petitioner's claim is somewhat difficult to characterize. Petitioner is not saying that prison officials knew of a danger posed to petitioner by his cellmate, or even that his cellmate was particularly dangerous. Instead, petitioner's claim is that prison officials knew that *petitioner* was dangerous because he has a tendency to be aggressive and get into fights and was hearing voices telling him to kill his cellmate. To turn this into a substantial risk of serious harm to petitioner, petitioner's theory must be that his tendency to fight and urge to kill cellmates alone created a substantial risk of harm because, at some point, a cellmate was bound to fight back and hurt him.

7

Petitioner's theory is not plausible. It is not possible to infer a substantial risk of serious harm to petitioner from petitioner's own tendency to harm others. The court of appeals has held that the Eighth Amendment is not violated when the harm alleged was caused in part by the prisoner's own manipulative behavior. Freeman v. Berge, 441 F.3d 546 (7th Cir. 2006) (no Eighth Amendment violation for food deprivation when prisoner was denied food for refusing to comply with rules regarding food delivery); Rodriguez v. Briley, 403 F.3d 952 (7th Cir. 2005) (same). Although petitioner may have a personality disorder, no inference can be drawn from his allegations that he cannot resist his urges to harm others with the help of medications or therapy. Ultimately, petitioner is responsible for his own behavior. His failure to control impulses he clearly realizes are detrimental to him is not enough by itself to implicate an Eighth Amendment concern. Therefore, petitioner will be denied leave to proceed on his claim that prison officials violated his Eighth Amendment rights by placing him with cellmates in spite of his own dangerous nature.

B.  Claim for Cruel and Unusual Punishment by Poisoning

Next, petitioner contends that prison officials violated his Eighth Amendment rights by poisoning him, which caused the pigmentation in his skin to dissolve. Petitioner contends that he "felt like" he was being poisoned "or something," that at some point his pigmentation began to dissolve away and that he was diagnosed as having vitiligo, an

8

autoimmune disease. Petitioner's allegations have a paranoid quality about them that raise serious concerns about the validity of the claim that he was poisoned by prison officials. However, even assuming he was poisoned, he does not allege the involvement or knowledge of any of named respondents in this action. Only those personally responsible for the deprivation of a constitutional right may be held liable under § 1983. Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994). Therefore, petitioner will be denied leave to proceed against respondents on his claim that he was poisoned by prison officials.

ORDER

IT IS ORDERED that

1. Petitioner Terrance L. Edwards's motion to amend the complaint, dkt. #16, is GRANTED.

2. Petitioner's motions to amend the complaint, dkts. ##4, 6-10, 15, are DENIED as moot and petitioner's motions to amend the complaint, dkt. #17, 18, are DENIED as unnecessary.

3. Petitioner's request for leave to proceed in forma pauperis on his claims that respondents James Dreer, Rick Raemisch, Michael Thurmer, Gary Ankarlo, C. Grisdale, Teralyn Sell and J. O'Donovan violated his Eighth Amendment rights by placing him in a cell with a cellmate or by poisoning him is DENIED and this case is DISMISSED with

prejudice for petitioner's failure to state a claim upon which relief may be granted.

  4. A strike will be recorded against petitioner pursuant to § 1915(g).

  5. The unpaid balance of petitioner's filing fee is to be paid in monthly payments according to 28 U.S.C. § 1915(b)(2). Petitioner has paid an initial partial payment of $1.49; the unpaid balance of petitioner's filing fee is $348.51 unless he has made payments in addition to his initial partial payment.

  6. The clerk of court is directed to close the file.

  Entered this 24th day of September, 2008.

          BY THE COURT:

          /s/
          _____
          BARBARA B. CRABB
          District Judge